IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DAVID SCHWARTZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| USP TEXAS, LP and | § | |
| NORTH CENTRAL SURGICAL | § | |
| CENTER, LLP, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff David Schwartz files this Original Complaint against Defendants USP Texas, LP and North Central Surgical Center, LLP, alleging Defendants retaliated against Plaintiff in violation of the False Claims Act, 31 U.S.C. §§ 3729 – 3733, and the Texas Medicaid Fraud Prevention Act, TEXAS HUMAN RESOURCES CODE § 36.001 *et. seq.* Plaintiff requests damages, interest, attorneys' fees, and costs for Defendants' unlawful acts.

**I.    PARTIES AND SERVICE**

1.     Plaintiff David Schwartz ("Plaintiff") is a resident of Rockwall County, Texas.

2.     Defendant USP Texas, LP ("USP") is a Texas Limited Partnership headquartered in Dallas, Texas. USP may be served via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201, or wherever it may be found.

3.     Defendant North Central Surgical Center, LLP ("NCSC") is a Texas general partnership registered as a limited liability partnership, with is principal place of business at 14201 Dallas Parkway, Dallas, Texas 75254. NCSC has not designated an agent for service of process. Federal Rule of Civil Procedure 4(e)(1) and 4(h)(1)(A) authorize service of process in

any manner allowed by Texas law. Pursuant to Texas Business Organizations Code § 5.251(1)(A), NCSC can be served through the Texas Secretary of State at the following address: Service of Process, Secretary of State, James E, Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701. Alternatively, NCSC may be served via any of its general partners, wherever they may be found.

3. Defendants USP and NCSC (a) have interrelated operations and centralized control of employment decisions; (b) are integrated in their ownership, management, personnel, policies and employment practices; and (c) share common ownership or financial control.

4. Each Defendant is the alter ego of the other.

5. Defendants are connected such that they should be considered a single or joint entity and employer.

## II.  JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this matter involves controversies arising under the laws of the United States, specifically the False Claims Act, 31 U.S.C. § 3730(h)(1) (the "FCA"). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims under the Texas Medicaid Fraud Prevention Act, TEXAS HUMAN RESOURCES CODE § 36.001 *et. seq*.

7. Venue is proper in the Northern District of Texas, under 28 U.S.C. § 1391(b)(1) and (2) because Defendants regularly conducts business in this District and because a substantial part of the events or omissions forming the basis of the suit occurred in this District.

## III.  FACTUAL SUMMARY

8. Defendants operate the North Texas Surgical Center Hospital (the "Hospital") at 9301 N. Central Expressway, Suite 100, Dallas, Texas 75231.

9. Plaintiff was employed by Defendants at the Hospital as Hospital Director of Pharmacy from April 10, 2017, to October 24, 2018.

10. Defendants decided to create an outpatient surgery center within the same building (but on a different floor) housing the Hospital.

11. Plaintiff Schwartz was a member of the group tasked with implementing the new outpatient surgery center.

12. Defendants filed an application with Texas Health and Human Services ("THHS") for the remote surgery center to be categorized and allowed to bill as a hospital outpatient department ("HOPD"), a status which would have entitled the remote surgery center to bill third party payors at a certain reimbursement rate.

13. Instead of granting Defendants a license to operate as an HOPD, THHS granted the remote surgery center only a license to operate as an ambulatory surgery center ("ASC").

14. In or around June 2018, Plaintiff Schwartz and other members of the implementation team were informed by Thanh Tran, the Hospital CEO, and Kathy Williams, Associate Chief Nursing Officer, that the HOPD application had been denied and an ASC license had been granted. Tran informed the group that, notwithstanding the denial of the HOPD license, the Hospital would operate the remote surgery center as an HOPD.

15. Immediately following the conclusion of the meeting in the administration conference room, Plaintiff informed Williams, Martha Drescher, Nursing Manager for the Hospital, and Michael Quaglieri, Chief Financial Officer and Compliance Officer for the Hospital, that operating the remote surgery center as an HOPD would violate its license as an ASC. Williams agreed with Plaintiff.

16. Throughout the timeframe below, Plaintiff continued to express to Hospital executives his concern that operating the remote surgery center as an HOPD would violate its license as an ASC, and stated his opposition to such.

17. The medical and pharmacy billing systems created by the Defendants commingled the operations of the newly-constructed remote ambulatory surgery center with the operations of the Hospital such that the operations of the remote ambulatory surgery center would be billed at the higher billing rates of an HOPD as opposed to the lower billing rates of an ~~ASC~~ ambulatory surgery center.

18. Consequently, without any segregation of billing, the U.S. Centers for Medicare & Medicaid Services ("CMS"), state Medicaid, and third-party payers would be overcharged by Defendants.

19. When Plaintiff learned that the medical and pharmacy billing systems created by the Defendants would result in this commingling and overbilling, he urged that a solution be found to remedy the situation.

20. In or around June 2018, a meeting occurred among Plaintiff, Ben Magestro, Chief Operating Officer of the Hospital, Williams, Ken Archer, Electronic Health Records Pharmacy Director, and an outside vendor to discuss a solution that would thereafter prevent the commingling and thus overbilling.

21. During this meeting, it was determined that the purchase of a new computer server would be necessary to prevent the commingling that would result in the overbilling.

22. Plaintiff again voiced his concern to Magestro, Williams, and Archer during that meeting that if the commingling were permitted to occur, the remote surgery center would be incorrectly billed as an HOPD at a higher billing rate. Plaintiff further expressed his view that

such comingling would inevitably result in CMS and state Medicaid being overcharged, thereby constituting fraud against both the United States government and the State of Texas, and result in noncompliance with federal and state laws and rules relating to drug recordkeeping. Williams agreed with Plaintiff that the planned operations would result in fraudulent billing.

23. Soon after the meeting, Archer announced that the separate server would not be purchased. That decision, as Archer had been told and already well knew, would consequently allow the operations of the remote surgery center to be falsely billed as an HOPD.

24. In or around September 2018, during a meeting with Martha Drescher, Nursing Manager for the Hospital, Williams, and Quaglieri, Plaintiff again stated his view that the Defendants' plan to bill services by the remote surgery center, merely licensed as an ASC, at the higher billing rate as a HOPD would "be fraud," and Plaintiff again voiced his opposition to such a practice.

25. On or about September 28, 2018, in a meeting with Tran and Williams, held in the NCSC hospital administration conference room, Plaintiff yet again conveyed concerns regarding regulatory compliance surrounding the ASC pharmacy licensure and handling of the proper handling of drugs records in that ASC. During that meeting Tran admitted to Schwartz that he (Tran) recognized that since the ASC was a "de novo" construction, the newly constructed ASC was not eligible to be licensed as a HOPD, and as it had not been granted a "waiver" from CMS, that the ASC was neither approved nor allowed to bill as an HOPD. Tran concurred with Schwartz's concerns.

26. On or about October 10, 2018, in a teleconference with Tran and Robin Shaw, Regional Vice President, along with outside legal counsel and various other executives, Plaintiff

again stated his position that the commingling of the billing records would violate regulatory compliance and ultimately constitute fraud, and he again voiced his continued opposition thereto.

27. Approximately four hours after the teleconference, Tran and Shaw summoned Plaintiff to a meeting wherein they falsely accused him of taking drugs out of Defendants' Hospital, and placed him on administrative leave.

28. Tran and Shaw's false accusation was based on Plaintiff taking a Tylenol tablet to relieve a headache from the employee-designated medicine cache, as was done by other Hospital staff countless times in the past, as was authorized by standard practices.

29. On or about October 12, 2018, in a phone call between Plaintiff, Tranh, and Shaw, Shaw stated that Plaintiff was being placed on paid administrative leave pending a supposed "investigation."

30. Plaintiff responded that his administrative leave was a retaliatory adverse action meant to punish him for his opposition to the overbilling plan. Plaintiff also informed Shaw that, because of his concern about the overbilling, and Defendants' action against him meant clearly to cover-up and ignore the resultant fraud, he believed he had the both the right and duty to report the overbilling to appropriate regulatory agencies. When Plaintiff informed Shaw and Tran that he accordingly planned to call regulatory agencies, Shaw accused him of "threatening the Hospital." She ended the call and informed Plaintiff she would contact Plaintiff regarding his return in the coming week.

31. On the same day, Plaintiff emailed Cris Enriquez, a Hospital HR staff member, and Quaglieri informing them of his conversation with Tranh and Shaw, that he had advised them he was being retaliated against, and also that he had the right to report the overbilling to appropriate regulatory agencies.

32. On or about October 24, 2018, Tran and Shaw terminated Plaintiff's employment.

33. In an effort to conceal their billing fraud, Defendants misleadingly created two sets of procedures purporting to describe the operations of the remote surgery center.

34. One set of procedures was created to be presented to the auditors for CMS that described the operations of an HOPD.  Hence, when the CMS auditor arrived for an audit, Defendants would show the auditor the set of procedures that described the operations of an HOPD.  Since the remote surgery center is being operated (and billed) as an HOPD, the Defendants' expectation was that when the auditor toured the facility the auditor (naturally) would see personnel and equipment that typically would be present in an HOPD, and thus not ask any questions about its actual status as only an ASC.

35. The other set of procedures were designed to be presented to the auditors for THHS, describing the operations of an ASC.  Thus, when a THHS auditor arrived for an audit, Defendants would show the auditor the set of procedures that described the operations of an ASC.  That plan included removing, prior to the auditor's tour of the facility, all personnel and equipment that typically would not be present in an ASC so as to avoid a closer look at actual operations and billing.

36. Defendants were fully cognizant and aware that their billing and other actions described above would and did result in fraud, yet they knowingly continued to engage in such practices, and took actions to intentionally cover-up such violations of law, including by terminating Plaintiff's employment.

37. The false accusations against Plaintiff, the alleged "investigation," the administrative leave, and the subsequent termination of Plaintiff's employment were retaliation for Plaintiff's repeated opposition to and attempts to prevent as well as to stop fraud against the

federal and state governments in violation of the FCA and the Texas Medicaid Fraud Prevention Act.

38. Defendants' stated basis for terminating Plaintiff's employment was a mere pretext for its retaliatory actions against him in violation of the FCA and the Texas Medicaid Fraud Prevention Act.

39. All conditions precedent have been performed or have occurred.

## IV. CAUSES OF ACTION

**COUNT ONE:   RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT UNDER 31 U.S.C. § 3730(h)(1)**

40. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

41. Plaintiff repeatedly and directly expressed to Defendants his concern about and opposition to billing the remote surgery center as an HOPD for reimbursements through Medicare and Medicaid, and that such a practice constituted fraud against the government.

42. Defendants were repeatedly and directly made aware of Plaintiff's opposition to and attempts to stop such violations of law, as described above.

43. Plaintiff was placed on suspension and later terminated in retaliation for his opposition to and attempts to stop Defendants' fraudulent plans and acts.

44. Plaintiff's suspension and discharge occurred because of his opposition to and attempts to stop Defendants' violation of the FCA, and due to his statement that he planned to report such violations to the appropriate regulatory agencies.

45. As a direct and proximate consequence of Defendants' violation, Plaintiff has suffered damages.

46. Plaintiff's damages include lost wages and other compensation and benefits of employment, and past and future emotional distress.

47. Plaintiff seeks double his lost wages, special damages, punitive damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT TWO:    RETALIATION IN VIOLATION OF THE TEXAS MEDICAID FRAUD PREVENTION ACT, TEXAS HUMAN RESOURCES CODE § 36.115**

48. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

49. Plaintiff repeatedly and directly expressed to Defendants his concern about and opposition to billing the remote surgery center as an HOPD for reimbursements through Medicaid, and stated that such a practice constituted fraud against the State of Texas.

50. Defendants were repeatedly and directly made aware of Plaintiff's opposition to and attempts to stop such violations of law, as described above.

51. Plaintiff was placed on suspension and later terminated in retaliation for his opposition to and attempts to stop Defendants' fraudulent plans and acts.

52. Plaintiff's suspension and discharge occurred because of his opposition to and attempts to stop Defendants' violation of the Texas Medicaid Fraud Prevention Act, and due to his statement that he planned to report such violations to the appropriate regulatory agencies

53. As a direct and proximate consequence of Defendants' violation, Plaintiff has suffered damages.

54. Plaintiff's damages include lost wages and other compensation and benefits of employment, and past and future emotional distress.

55. Plaintiff seeks double his lost wages, special damages, punitive damages, pre- and post-judgment interest, attorneys' fees, and costs.

**V.    JURY DEMAND**

56. Plaintiff demands a jury trial and has tendered the appropriate fee.

VI.     **PRAYER**

WHEREFORE, Plaintiff respectfully requests that the Court:

A.      Issue summons for Defendants to appear and answer;

B.      Award to Plaintiff a judgment against Defendants for:

1.      Double lost wages and benefits (both past and future), the sum to be determined at time of trial;

2.      Special damages for past and future emotional distress;

3.      Punitive damages;

4.      Pre- and post-judgment interest;

5.      Attorneys' fees; and

6.      Costs.

Plaintiff further requests such other relief to which he is entitled in law or in equity.

Respectfully Submitted,

 /s/ Jennifer J. Spencer
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF DAVID SCHWARTZ**